1  MATTHEW E. LILLY, SBN 218143
   mlilly@fwtrl.com
2  FINLAYSON WILLIAMS TOFFER
   ROOSEVELT & LILLY LLP
3  15615 Alton Parkway, Suite 250
   Irvine, California 92618
4  Phone: (949) 759-3810 / Fax: (949) 759-3812

5  Attorneys for Plaintiff
   U.S. Bank National Association

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11  U.S. Bank National Association,        CASE NO. EDCV12-1320-GW (DTBX)

12              Plaintiff,                 **COMPLAINT FOR:**

13      vs.                                **(1) CANCELLATION OF
                                           INSTRUMENTS**
14  David Alan Boucher, an individual,
    Ruben Heredia, an individual, The     **(2) QUIET TITLE**
15  Roberto Vargas Cestui Que Trust, and
    DOES 1 through 10, inclusive,         **(3) SLANDER OF TITLE**
16
                Defendants.               DEMAND FOR JURY TRIAL
17

18

19

20

21

22

23

24

25

26

27

28

FILED

2012 AUG -8  PM 4: 26

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

COPY

## **DESCRIPTION OF THE PARTIES AND PROPERTY**

1.      Plaintiff U.S. Bank National Association ("Plaintiff") is a national banking association with its principal place of business in Ohio.

2.      Plaintiff is informed and believes, and based thereon alleges, that Defendant David Alan Boucher ("Boucher") is an individual who maintains his residence in the State of California, county of Los Angeles, and is a citizen of the State of California.

3.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Ruben Heredia ("Heredia") is an individual who maintains his residence in the State of California, county of San Bernardino, and is a citizen of the State of California.

4.      Plaintiff is informed and believes, and based thereon alleges, that the Roberto Vargas Cestui Que Trust is a trust, for which the trustee is an individual who maintains his residence in the State of Nevada, and is a citizen of the State of Nevada.

5.      The subject matter of this action is residential real property located at 13777 De Garmo Avenue, Sylmar, California 91342 (the "Property").  The legal description of the Property is as follows:

> LOT 30 OF TRACT NO. 31189, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 879 PAGES 46 TO 49 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

6.      Plaintiff is unaware of the true names and capacities of the Defendants sued herein as Does 1 through 50, inclusive, and therefore sues said Doe Defendants by such fictitious names.  Plaintiff is informed and believes, and based thereon alleges, that each of the Doe Defendants are legally responsible in some manner for the events and happenings alleged herein, and that Plaintiff's damages were proximately caused by their conduct.  Plaintiff will seek leave of court to amend this Complaint to allege the Doe Defendants' true names and capacities when ascertained.

7.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned each defendant was acting as the agent, employee, principal, officer, partner, joint venturer, servant, director or other representative of one or more of the remaining defendants and, in committing the acts and/or omissions mentioned herein, was acting within the course and scope of such employment, agency, partnership, joint venture or other relationship, and with the knowledge, consent, authorization and ratification of the remaining defendants.

## JURISDICTION AND VENUE

8.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1348.  Plaintiff is a national banking association with its principal place of business located in Ohio.  Plaintiff, therefore, is deemed to be a citizen of Ohio for purposes of diversity jurisdiction.  Defendants, in turn, are citizens of California and Nevada, respectively.  Further, the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1331(b) because the Property that is the subject of this action is situated in this district, and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND FACTS

### A.     Plaintiff Forecloses On The Property

10.     In or about December 2006, Heredia and his wife, Martha Heredia, received a $350,000 loan with Downey Savings and Loan Association, F.A. ("Downey Savings").  The loan was secured by a Deed of Trust on the Property, naming the Downey Savings as beneficiary and DSL Service Company and trustee (the "Deed of Trust").  A true and correct copy of the Deed of Trust is attached hereto as Exhibit A. FCI Lender Services, Inc. ("FCI") was later substituted as trustee on the Deed of Trust.

11.     Pursuant to the Deed of Trust, Downey Savings, DSL, and their respective assignees, had the right to foreclose on the Property in the event of a default by Heredia and his wife.

12.     On November 21, 2008, the Office of Thrift Supervision closed Downey Savings and appointed the Federal Deposit Insurance Corporation ("FDIC-R") as receiver for that financial institution.   Concurrent with that appointment, the FDIC-R sold the banking operations and certain assets of Downey Savings to Plaintiff, including Heredia's loan with Downey Savings.

13.     On or about May 19, 2011, Heredia caused to be recorded in the Official Records of the Recorder's Office, Los Angeles County, Document No. 20110708215, a document titled Quitclaim Deed, purporting to reflect a transfer of the Property from Heredia to defendant Roberto Vargas Cestui Que Trust.  A true and correct copy of the Quitclaim Deed is attached hereto as Exhibit B.  The purported transfer of the Property to the Roberto Vargas Cestui Que Trust was done without U.S. Bank's knowledge or consent, and constitutes a breach of Heredia's loan agreements with Plaintiff.

14.     Heredia defaulted on his loan, and in November 2011, Plaintiff commenced nonjudicial foreclosure proceedings.

15.     On or about January 12, 2012, FCI conducted a foreclosure sale of the Property.  Plaintiff purchased the Property at the foreclosure sale for a bid price of $266,250.

16.     On or about January 17, 2012, Plaintiff caused to be recorded in the Official Records Recorder's Office, Los Angeles County, Document No. 20120068500, titled Trustee's Deed Upon Sale, documenting the sale of the Property to Plaintiff through foreclosure.  A true and correct copy of the Trustee's Deed Upon Sale is attached hereto as Exhibit C.

**B.      Heredia And Boucher Record Fraudulent Documents Clouding Title To The Property**

17.     On or about June 4, 2012, Heredia and Boucher caused to be recorded in the Official Records Recorder's Office, Los Angeles County, Document No. 21020829844, titled "Grant Deed" (the "Fraudulent Grant Deed"), and an exhibit to the Fraudulent Grant Deed, titled "Notice For The Partial Cancellation Of Debt By Set-Off" (the "Fraudulent Cancellation").  A true and correct copy of the Fraudulent Grant Deed and Fraudulent Cancellation is attached hereto as Exhibit D.

18.     The Fraudulent Grant Deed falsely purports to document a "reconveyance of [the Property from Plaintiff to Heredia] upon satisfaction of debt."  No such transfer ever occurred.  Plaintiff never reconveyed the Property to Heredia, and Plaintiff did not become aware of the Fraudulent Grant Deed until it later attempted to sell the Property to a third party as more fully described below.  The purported reconveyance described in the Fraudulent Grant Deed was fictional.

19.     Boucher signed the Fraudulent Grant Deed, ostensibly as an "authorized representative" of Plaintiff.  However, Boucher is not an employee of Plaintiff, has never been employed by Plaintiff, was not authorized to act as Plaintiff's agent, and had no authority to sign or record the Fraudulent Grant Deed or any other document on Plaintiff's behalf.

20.     The face of the Fraudulent Grant Deed states that it was recorded by Heredia.  As with Boucher, Heredia is not an employee of Plaintiff, has never been employed by Plaintiff, was not authorized to act as Plaintiff's agent, and had no authority to sign or record the Fraudulent Grant Deed or any other document on Plaintiff's behalf.

21.     On or about June 4, 2012, Heredia and Boucher caused to be recorded the "Notice For The Partial Cancellation Of Debt By Set-Off," *i.e.*, the Fraudulent Cancellation.  A true and correct copy of the Notice For The Partial Cancellation Of Debt By Set-Off is attached hereto as Exhibit D.

22.     The Fraudulent Cancellation purports to reflect a "settlement of a contract between Ruben Heredia and U.S. Bank National Association."  No such settlement was entered into between Plaintiff and Heredia, and the statements made in the Fraudulent Cancellation are false and were false when made.

23.     The Fraudulent Cancellation states on its face that it was recorded for Plaintiff, and it was signed by Boucher as follows:  "David Alan Boucher, Authorized Representative."  But as stated above, Boucher is not an employee of Plaintiff, has never been employed by Plaintiff, was not authorized to act as Plaintiff's agent, and had no authority to sign or record the Fraudulent Cancellation or any other document on Plaintiff's behalf.

24.     Plaintiff is informed and believes, and based thereon alleges, that Boucher has engaged in similar conduct concerning other properties on behalf of his customers, recording fraudulent documents as part of a scheme to defraud lenders and rightful property owners out of clear title to their respective properties.

**C.     Plaintiff Is Unable To Sell The Property Because Of The Cloud On Title Created By Heredia And Boucher**

25.     Plaintiff has entered into a written agreement to sell the Property to a third party buyer.  Closing of the sale is contingent on the buyer obtaining clear title to the Property.

26.     During the escrow process, Plaintiff and the buyer learned for the first time that Heredia and Boucher had recorded the Fraudulent Grant Deed and Fraudulent Cancellation.  The sale is currently on hold, pending Plaintiff's ability to clear the clouded title on the Property fraudulent caused by Defendants.

<u>**FIRST CLAIM FOR RELIEF**</u>

**(Cancellation of Instruments – Heredia and Boucher)**

27.     Plaintiff realleges the allegations contained in Paragraphs 1 through 26.

5

28.     Plaintiff is the owner of the Property in fee simple absolute as a result of the foreclosure sale and subsequent recordation of the Trustee's Deed Upon Sale. *See* Exhibit C.

29.     After Plaintiff acquired the Property, Heredia and Boucher caused the Fraudulent Grant Deed and Fraudulent Cancellation to be recorded, ostensibly on behalf of Plaintiff.  However, the Fraudulent Grant Deed and Fraudulent Cancellation have no force or effect because the transactions described in those documents are fictitious, and because Heredia and Boucher are not employees, agents, or authorized signatories for Plaintiff.

30.     Unless the Fraudulent Grant Deed and Fraudulent Cancellation are canceled, *nunc pro tunc*, those documents will remain a cloud on title and render it impossible for Plaintiff to sell the Property.  In addition, unless the Fraudulent Grant Deed and Fraudulent Cancellation are canceled, *nunc pro tunc*, the possibility will remain that Heredia and Boucher may attempt to convey the Property to a third party or otherwise encumber the Property, further clouding title and impairing Plaintiff's ability to enjoy full use of the Property.

31.     Heredia and Boucher, when they signed and recorded the Fraudulent Grant Deed and Fraudulent Cancellation, knew or should have known that they were not authorized to record such documents on behalf of Plaintiff.  Indeed, Heredia and Boucher intentionally recorded the Fraudulent Grant Deed and Fraudulent Cancellation without authorization in an attempt to defraud Plaintiff and deprive it of the Property.

32.     Heredia and Boucher's actions described herein have damaged Plaintiff in that Plaintiff is unable to sell the Property clear of title, Plaintiff has incurred costs attempting to clear title to the Property, Plaintiff has incurred maintenance costs, and has incurred other damages.

33.     Heredia and Boucher's actions described herein were fraudulent, intentional, malicious, made in bad faith, and specifically designed to injure Plaintiff

1   and deprive Plaintiff of the Property.  Accordingly, Plaintiff seeks to recover

2   exemplary and punitive damages.

3                          **SECOND CLAIM FOR RELIEF**

4                          **(Quiet Title – All Defendants)**

5          34.    Plaintiff realleges the allegations contained in Paragraphs 1 through 33.

6          35.    Plaintiff is informed and believes, and based thereon alleges, that

7   Defendants assert an interest in the Property adverse to Plaintiff's interest.  Defendants'

8   claims to title are fraudulent and without any force and effect.

9          36.    Plaintiff seeks to quiet title in the Property, *nunc pro tunc*, to January 12,

10  2012, the date upon which Plaintiff purchased the Property at the foreclosure sale.

11                         **THIRD CLAIM FOR RELIEF**

12                      **(Slander of Title – Heredia and Boucher)**

13         37.    Plaintiff realleges the allegations contained in Paragraphs 1 through 36.

14         38.    Through the Fraudulent Grant Deed and Fraudulent Cancellation, Heredia

15  and Boucher published false statements concerning title to the Property.  More

16  specifically, Heredia and Boucher falsely represented that Plaintiff has reconveyed the

17  Property to Heredia, that Heredia and Boucher were authorized to sign/record the

18  Fraudulent Grant Deed and Fraudulent Cancellation on Plaintiff's behalf, and that the

19  other transactions described in the documents actually occurred.  All of these

20  representations were false when made – Plaintiff has never reconveyed the Property to

21  Heredia, Heredia and Boucher were not authorized to sign or record the documents on

22  Plaintiff's behalf, and the transactions described in the documents were fictitious.

23         39.    The statements made by Heredia and Boucher in the Fraudulent Grant

24  Deed and Fraudulent Cancellation are disparaging to Plaintiff's title in the Property in

25  that, on their face, the documents purport to represent that title to the Property has been

26  reconveyed to Heredia by Plaintiff, when in fact, no such reconveyance has occurred.

27         40.    Heredia and Boucher's statements made in the Fraudulent Grant Deed and

28  Fraudulent Cancellation are not privileged, and in any event, were made with malice in

that they were intended to fraudulently deprive Plaintiff of its rightful clean title to the Property.

41.     Heredia and Boucher's actions described herein were intended to, and had the effect of, casting a legal cloud on Plaintiff's title to the Property.  Despite a written agreement to sell the Property to a third party buyer, Plaintiff has been unable to close the sale due to the cloud on title created by Heredia and Boucher.

42.     Heredia and Boucher's actions described herein have damaged Plaintiff in that Plaintiff is unable to sell the Property clear of title, Plaintiff has incurred costs attempting to clear title to the Property, Plaintiff has incurred maintenance costs, and has incurred other damages.

43.     Heredia and Boucher's actions described herein were fraudulent, intentional, malicious, made in bad faith, and specifically designed to injure Plaintiff and deprive Plaintiff of the Property.  Accordingly, Plaintiff seeks to recover exemplary and punitive damages.

## **PRAYER FOR RELIEF**

NOW THEREFORE, Plaintiff prays for Judgment on the Complaint as follows:

1.     For compensatory, general, and special damages in an amount according to proof, currently believed to exceed $300,000;

2.     For exemplary and punitive damages;

3.     A temporary restraining order, preliminary injunction, and permanent injunction, enjoining Defendants and their respective agents, servants, and employees, and all persons acting in concert with them, from (a) recording any additional documents clouding title to the Property, (b) holding themselves out as authorized representatives or agents of Plaintiff, and (c) selling, transferring, leasing, encumbrancing, or otherwise taking any actions affecting or purporting to affect Plaintiff's clear title to the Property.

4.     For an order canceling the Fraudulent Grant Deed and Fraudulent Cancellation, *nunc pro tunc*, as of the date(s) of recordation.

5.      For an order quieting title in the Property to Plaintiff in fee simple absolute, and invalidating any interest in the Property purportedly held by Defendants.

6.      For interest to the extent allowable by law;

7.      For costs and expenses of suit, including attorneys' fees;

8.      For equitable and such other further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial. *See* FED. R. CIV. P. 38; Cent. Dist. L.R. 38-1.

DATED: August 8, 2012

MATTHEW E. LILLY
FINLAYSON WILLIAMS TOFFER
ROOSEVELT & LILLY LLP

By:_____
           Matthew E. Lilly

Attorneys for Plaintiff
U.S. Bank National Association

Complaint.doc

9

# EXHIBIT A

**FIRST SOUTHWESTERN TITLE CC**
Pasadena Office

Recording Requested By:
Downey Savings and Loan
Association, F.A.
Return To:
Downey Savings and Loan
Association, F.A.
P.O. Box 6060, 3501
Newport Beach, CA  92658·

JamboreeRd.



12/18/06

**20062805736**

Prepared By:
Downey Savings and Loan
Association, F.A.
**P.O. Box 6060, 3501 Jamboree Rd,
Newport Beach, CA  92658-6060**

———————————————————|Space Above This Line For Recording Data|————————————————————

# DEED OF TRUST

Title Order No.: 10002109-35
Escrow No.: 10002109-001-EC
APN: 2603-021-021

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated December 6, 2006
together with all Riders to this document.
(B) "Borrower" is
RUBEN S. HEREDIA  and MARTHA HEREDIA, Husband and Wife

Borrower's address is 13777 DE GARMO AVENUE, SYLMAR CA 91342
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is Downey Savings and Loan Association, F.A.

Lender is a federally chartered savings association
organized and existing under the laws of the United States of America

9032969206

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01

VMP -6(CA) (0207).01
Page 1 of 15          Initials:

VMP Mortgage Solutions, Inc.



3

Lender's address is 3501 Jamboree Road, Newport Beach, CA 92660

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is DSL Service Company, A California Corporation

**(E) "Note"** means the promissory note signed by Borrower and dated December 6, 2006
The Note states that Borrower owes Lender three hundred fifty thousand and 00/100
Dollars
(U.S. $350,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 1, 2037
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider [x] 1-4 Family Rider | |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |

**Rider to Promissory Note and Security Instrument**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

VMP®-6(CA) (0207).01                    Page 2 of 15              Initials: _____

9032969206

Form 3005  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **LOS ANGELES** :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LOT 30 OF TRACT NO. 31189, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 879 PAGES 46 TO 49 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

### SEE ATTACHED EXHIBIT A

Parcel ID Number: **2603-021-021**                         which currently has the address of
**13777 DE GARMO AVENUE**                                                                   [Street]
**SYLMAR**                                             [City], California **91342**          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

9032969206

Initials:

-6(CA) (0207).01                    Page 3 of 15                                    Form 3005  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _____   0032969206

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

9032969206

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

9032969206

Initials: _____

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

9032969206

Initials:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

9032969206

Initials:

VMP -6(CA) (0207).01          Page 8 of 15          Form 3005  1/01

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

9032969206

-6(CA) (0207).01　　　　　　　　　Page 9 of 15　　　Initials: ___　　　Form 3005　1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

9032969206

Initials:

-6(CA) (0207).01                    Page 10 of 15                    Form 3005   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

9032969206

Initials:

VMP®   -6(CA) (0207).01                          Page 12 of 15                                     Form 3005   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

9032969206

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        RUBEN S. HEREDIA              -Borrower


_____        _____ (Seal)
                                                                     -Borrower


_____ (Seal)         _____ (Seal)
                       -Borrower                              -Borrower


_____ (Seal)         _____ (Seal)
                       -Borrower                              -Borrower


_____ (Seal)         _____ (Seal)
MARTHA HEREDIA, Non-Applicant -Borrower                       -Borrower
Spouse*


*Non-Applicant Spouse signs as 'Borrower' solely for the purpose of pledging the collateral without personal obligation for payment of any sums secured by this Security Instrument.

9032969206

VMP® -6(CA) (0207).01          Page 14 of 15          Form 3005  1/01

16

State of California
County of Los Angeles                              } ss.

On December 7, 2006   before me, Erica Rose Cordova, notary public

                                                        personally appeared

RUBEN S. HEREDIA  & MARTHA HEREDIA

, ~~personally known to~~ me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                        Erica Rose Cordova   (Seal)

ERICA ROSE CORDOVA
Commission # 1519991
Notary Public - California
Los Angeles County
My Comm. Expires Oct 17, 2008

                                                        9032969206
Initials                                                Form 3005  1/01

VMP -6(CA) (0207).01                Page 15 of 15

## EXHIBIT "A"

LOT 30 OF TRACT NO. 31189, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 879 PAGES 46 TO 49 INCLUSIVE, OF MAPS,, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 100 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEED RECORDED IN BOOK D-1101 PAGE 89, OFFICIAL RECORDS.

A.P.N. 2603-021-021



# FIXED RATE INTEREST ONLY/ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS FIXED RATE INTEREST ONLY/ADJUSTABLE RATE RIDER is made this **6th** day of **December, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date give by the undersigned ("Borrower") to secure Borrower's Fixed Rate Interest Only/Adjustable Rate Note (the "Note") to Downey Savings and Loan Association, F.A. ("Lender") of the same date and covering the property described in the Security Instrument and located at :

### 13777 DE GARMO AVENUE, SYLMAR, CA 91342

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN BORROWER'S MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of **6.400 %. The Note also provides for change in the initial fixed interest rate to an adjustable interest rate, as follows:**

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **January, 2012** , and the adjustable interest rate I will pay may change on that day every six months thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called a "Change Date."

9032969206

MULTI STATE FIXED RATE INTEREST ONLY/ADJUSTABLE RATE RIDER - WSJ SIX-MONTH LIBOR INDEX  -  Single Family

A350R1.UFF v1-12-2005                              Page 1 of 4                              Initials:

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 30 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** percentage points (**2.750**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **11.400 %** or less than **4.400 %**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage point from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **12.400 %**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

9032969266

A350R2.UFF v1-12-2005          Page 2 of 4          Initials:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B(1) above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.

9032969206

A350R3.UFF v1-12-2005                    Page 3 of 4                    Initials:

If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed Rate Interest Only/Adjustable Rate Rider.

Non-Applicant Spouse signs as 'Borrower' solely for the purpose of pledging the collateral without personal obligation for payment of any sums secured by this Security Instrument.

_____(Seal)
RUBEN S. HEREDIA                -Borrower

_____(Seal)
                                -Borrower

_____(Seal)
                                -Borrower

_____(Seal)
                                -Borrower

_____(Seal)
                                -Borrower

_____(Seal)
                                -Borrower

_____(Seal)
                                -Borrower

_____(Seal)
MARTHA HEREDIA,                 -Borrower
Non-Applicant Spouse

                                          [Sign Original Only]

A350R4.UFF v1-12-2005              Page 4 of 4                    9032969206



# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **6th** day of **December, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Downey Savings and Loan Association, F.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 13777 DE GARMO AVENUE, SYLMAR, CA 91342

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**9032969206**

Page 1 of 3          D057R1A.UFF Task 10747 03/29/02 JS

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**THE FOLLOWING TERMS AND PROVISIONS** shall be applicable only at such time as the Property is no longer owner-occupied.

**D. OCCUPANCY.** Section 6 of the Security Instrument is deleted.

**E. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph E, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**F. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

9032969206

D057R2A.UFF (07/13/04) CR20316 RG

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**G.  CROSS-DEFAULT PROVISION.**  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)  
RUBEN S. HEREDIA           -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
MARTHA HEREDIA, Non-Applicant   -Borrower  
Spouse*

*Non-Applicant Spouse signs as 'Borrower' solely for the purpose of pledging the collateral without personal obligation for payment of any sums secured by this Security Instrument.

9032969206

Page 3 of 3                 D057R3A.UFF (7/13/04) CR20316 RG



# RIDER TO PROMISSORY NOTE AND SECURITY INSTRUMENT

Loan Number: 9032969206          Date: December 6, 2006

Property Address: 13777 DE GARMO AVENUE, SYLMAR, CA 91342

This Rider is hereby incorporated into that certain deed of trust/mortgage (Security Instrument), and that certain promissory note (Note), both dated the same date as this Rider executed by Borrower in favor of Downey Savings and Loan Association, F.A. (Lender or Note Holder). Anyone who takes the Note by transfer and who is entitled to receive payments under the Note is also called the Note Holder. All capitalized terms used but not defined in this Rider shall have the same meaning as set forth in the Note and Security Instrument. To the extent that any provisions in this Rider are inconsistent with the Security Instrument and/or the Note, this Rider shall prevail. This Rider is secured by the Security Instrument.

If the Federal Home Loan Mortgage Corporation (FHLMC), the Federal National Mortgage Association (FNMA) or any other investor buys all or some of Lender's rights under the Security Instrument and the Note, the provisions of this Rider, may, at the investor's discretion, no longer have any force or effect. If thereafter FHLMC or FNMA or any other owner should retransfer the Security Instrument and Note to Lender or Lender's successor in interest, then this Rider shall thereupon be automatically reinstated, without any additional writing or document.

## 1. LATE CHARGES and ACCRUED INTEREST.

If any installment is not received by Note Holder within fifteen (15) days after its due date, Borrower shall pay Note Holder a late charge in an amount equal to six percent (6.000%) of the installment due that is applicable to the payment of principal and interest, or $5.00, whichever is greater. If the fifteen day period ends on a weekend or a holiday, the period is extended to the next business day. Borrower acknowledges that it would be difficult and impractical to fix Note Holder's actual damages arising out of any late payment and that the foregoing late payment charge is a reasonable estimate of the same and shall be presumed to be the actual amount. The provisions of this paragraph shall not limit Note Holder's right, under the Security Instrument or otherwise, to compel prompt performance under the Note. Upon default, accrued and unpaid interest shall further bear interest at the then applicable interest rate until paid.

If Borrower is assessed a late charge and sufficient funds are not available in Borrower's checking account when Lender attempts to debit Borrower's loan payment from Borrower's designated checking account, a "returned item charge" will be assessed in addition to the late charge.

## 2. INTEREST ON PAST DUE SUMS.

If any sum due under the Note is not paid in accordance with the terms of the Note, including accumulated interest, then the sum(s) not paid shall bear interest at the same rate as the principal, or six percent (6.0%) plus the Bank of America Prime rate as publicly announced by the Bank of America National Trust and Savings Association, a National Association as its 'Referenced Rate', whichever is higher, in order to compensate Lender for its enforcement costs arising from the default. In the event the Index ceases to be published, then Note Holder may select a similar alternative published index over which the Note Holder has no control, in which case such alternative index shall become the Index.

1D107-1.UFF (10/24/05) CR30003 RG

9032969206

## 3. NOTE HOLDER'S TREATMENT OF PAYMENTS.

Except as otherwise required by law, Note Holder may apply all payments accepted by Note Holder to any outstanding obligations of Borrower under the Loan Documents in any order or priority Note Holder elects in its sole and absolute discretion. Note Holder may disregard any designation or notation by Borrower (or anyone acting on Borrower's behalf) as to how a payment is to be applied by Note Holder. If Note Holder elects not to accept a payment as permitted under Section 1 of the Security Instrument, Note Holder may return the payment to Borrower regardless of who tendered payment, and in such event, Note Holder shall not have any liability to Borrower or any third party as a result thereof. Borrower shall indemnify, defend, protect and hold Note Holder harmless, from and against all claims, damages, expenses, losses and liabilities, in whatever form, suffered or incurred by Note Holder as a result of Note Holder's return of a payment to Borrower.

## 4. EVENTS OF DEFAULT; REMEDIES.

The following shall constitute additional events of default under the Security Instrument:

(A)   Any person's attempt to reconvey Note Holder's interest in the Property without Note Holder's prior written consent;

(B)   Any person's attempt to have the Note, Security Instrument, this Rider or any of the other Loan Documents declared invalid or unenforceable;

(C)   Failure to pay when due any sum due under any of the Loan Documents;

(D)   Any default under any provision of the  Security Instrument; or

(E)   Borrower default under any other deed of trust or other instrument secured by the Property.

Note Holder may use in-house counsel or retain outside lawyers to analyze and respond to any event of default, and Note Holder may charge Borrower reasonable attorneys' fees and costs for such analysis and response. Note Holder may add these legal expenses to the Note and/or demand immediate reimbursement from Borrower. Borrower's failure to promptly reimburse Note Holder shall also constitute an event of default under the Security Instrument.

Upon the occurrence of any events of default, all sums secured by the Security Instrument (including all of Note Holder's attorneys' fees and costs) shall at once become due and payable at the option of Note Holder with or without prior notice by Note Holder and regardless of any prior forbearance. In such event Note Holder, at its option, may then or thereafter deliver to the Trustee a written declaration of default and demand to sell the Property and shall cause to be filed of record a written notice of default and election to cause the Property to be sold. Note Holder shall also deposit with the Trustee the Security Instrument and any notes and all documents evidencing expenditures secured thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, the Trustee, without demand on Borrower, shall sell the Property at the time and place specified by such Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Note Holder may credit bid at the sale to the extent of the amount owing  under the Loan Documents, including the Trustee's fee and expenses. The Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. The Trustee may postpone the sale of all or any portion of the Property by public declaration made by the Trustee at the time and place last appointed for sale. If the Property is sold, the Trustee shall deliver to the purchaser a deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof.

9032969206

Any person, including Borrower, the Trustee or Note Holder may purchase at such sale. After deducting all costs, fees and expenses of the Trustee, including costs of evidence of title in connection with such sale, the Trustee shall apply the remaining proceeds of sale first to payment of all sums expended under the terms of the Security Instrument not yet repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby (including the Note). If there be any proceeds remaining, the Trustee shall distribute them to the person or persons legally entitled thereto.

5. HAZARD OR PROPERTY INSURANCE.

Unless Note Holder and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Note Holder for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Note Holder's option, in such order and proportion as it may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by the Security Instrument, whether or not then due, and to such components thereof as Note Holder may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Note Holder. If Borrower abandons the Property, or does not answer within 30 days a notice from Note Holder that the insurance carrier has offered to settle a claim, then Note Holder may collect the insurance proceeds. Note Holder may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by the Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

If Borrower obtains earthquake insurance, and other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Note Holder, then (i) Borrower must ensure that such insurance names Note Holder as loss payee and (ii) such insurance shall be subject to this paragraph with respect to use of insurance proceeds.

Note Holder may charge a reasonable fee for the cost of determining whether the building or mobile home securing a loan is located in an area having special flood hazards, subject to applicable law.

1D107-3.UFF (05/12/2006)



9032969206

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider.

Non-Applicant Spouse signs as 'Borrower' solely for the purpose of pledging the collateral without personal obligation for payment of any sums secured by this Security Instrument.

_____(Seal)          _____(Seal)
RUBEN S. HEREDIA          -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                          -Borrower     MARTHA HEREDIA, Non-Applicant   -Borrower
                                        Spouse*

Page 4 of 4                    1D107-4.UFF (10/24/05) CR30003 RG

**This page is part of your document - DO NOT DISCARD**

06 2805736

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

**12/18/06 AT 08:00AM**

## TITLE(S) :

L E A D    S H E E T

| FEE | | D.T.T. | |
|---|---|---|---|
| Code 01 - 85.00 | Code T008 - 001 | | |
| Code 18 - 04.00 | | | |
| Code 20 - 02.00 | | | |

CODE
20

CODE
19

CODE
9

Grand Total = $91.00

Page Count = 27

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black Ink.**

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**



# EXHIBIT B

**This page is part of your document - DO NOT DISCARD**



# 20110708215



Pages:
0002

**Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California**

**05/19/11 AT 03:58PM**

| | | |
|---|---|---|
| FEES: | | 19.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 19.00 |



LEADSHEET



201105190620051

00004173400

003313491

SEQ:
04

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
ROBERTO VARGAS
When Recorded Mail To:

*THE ROBERTO VARGAS CESTUI QUE TRUST*
*2300 W, Sahara Ave Suite ;400 Box 26*
*Las Vegas, NV 89102*



05/19/2011

*20110708215*

SAPCE ABOVE THIS LINE FOR RECORDER;S USE

APN:2603-021-021           **QUITCLAIM DEED**

THE UNERSINED GRANTOR(S) DECLARE(S):
    DOCUMENTARY TRANSFER TAX is $ 0           CITY TAX IS $ 0
    ☐ computed on full value of property conveyed, or
    ☒ computed on full value less value of liens or encumbrances remaining at time of sale,
    ☐ Realty not sold
    ☐ Unincorporated area        ☒ City of Sylmar        , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
  RUBEN HEREDIA        ,Grantor

Do(es) Herby REMISES, RELEASES AND FOREVER QUITCLAIMS to
THE ROBERTO VARGAS CESTUI QUE TRUST, Grantee

**"This property is begin transferred into a trust. R&T 11911"**

the following described real property in the county of <u>Los Angeles</u>        ,State of California:
DESCRIBED AS FOLLOW : Lot 30, of track No. 31189, in the City of Los Angeles, County of Los Angeles, State of california,
as per map recorded in in Book 879 Page(s) 46 to 49 inclusive of maps, in the office of the county recorder of said county.
commonly known as  13777 de Garmo Avenue, Sylmar, CA. 91342

Dated. **05/17/2011**

RUBEN HEREDIA

X _(signature)_

**CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC**

STATE OF CALIFORNIA
COUNTY OF  Los Angeles  S S

On 5-17-11 before me ANTONIO S, PASCUAL Notary Public, personally appeared, RUBEN HEREDIA who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s)
acted, executed the instrument
I certify under PENALTY OF PERJURY under the laws of the State of California that the forgoing paragraph is true and correct
WITNESS my hand and official seal

ANTONIO S PASCUAL
Commission # 1822141
Notary Public - California
Los Angeles County
My Comm. Expires Nov 10, 2012

Ste. 722

Signature _(signature)_ (Seal)

3650 Wilshire Blvd. L.A., Ca. 90010

**Mail Tax Statements to Return Address Above**

EXHIBIT C

This page is part of your document - DO NOT DISCARD

## 20120068500





**Pages:**
**0004**

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**01/17/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**



201201170200002

00005241270



003744866

**SEQ:**
**10**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t97

When Recorded Mail to:
**LAWYERS TITLE COMPANY-MV**
U.S. BANK NATIONAL ASSOCIATION
3121 MICHELSON DRIVE
FORECLOSURE DEPARTMENT, 6TH
FLOOR
IRVINE, CA  92612

Mail Tax Statements to:
Same as above



01/17/2012

*20120068500*

Space above this line for Recorder's use only

Title Order No. 5902292          Trustee Sale No. 75530          Loan No. 9032969206

## TRUSTEE'S DEED UPON SALE

APN   <u>2603-021-021</u>
The undersigned grantor declares:

| | | |
|---|---|---|
| 1) | The Grantee herein was the foreclosing beneficiary. | |
| 2) | The amount of the unpaid debt together with costs was ........................................ | <u>$382,035.58</u> |
| 3) | The amount paid by the grantee at the trustee sale was........................................ | <u>$266,250.00</u> |
| 4) | The documentary transfer tax is ......................................................................... | <u>$0.00</u> |
| 5) | Said property is located in the City of <u>Los Angeles</u>. | |

and FCI LENDER SERVICES, INC.
(herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to  U.S.  BANK NATIONAL ASSOCIATION

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of <u>Los Angeles</u>, State of California, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated <u>12/06/2006</u> and executed by <u>RUBEN S. HEREDIA AND MARTHA HEREDIA, HUSBAND AND WIFE,</u>

as Trustor, and <u>RECORDED ON 12/18/06 AS DOC #06 2805736</u> of official records of <u>Los Angeles</u> County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County.

Page 1





*3*

**TRUSTEE'S DEED UPON SALE – continued**

Trustee Sale No.  75530

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

Said property was sold by said Trustee at public auction on 01/12/2012 at the place named in the Notice of Sale, in the county of Los Angeles , California, in which the property is situated. Grantee, being the highest bidder at said sale, became the purchaser of said property and paid therefore to said trustee the amount bid being $266,250.00 in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

DATE: 01/12/2012

FCI LENDER SERVICES, INC., as Trustee

Vivian Prieto, Vice-President

**CALIFORNIA NOTARY ACKNOWLEDGMENT**

STATE OF       CALIFORNIA
COUNTY OF    Orange

On 01/12/2012 before me, *****Carol Joy Long*****, Notary Public, personally appeared Vivian Prieto who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

Notary Public Signature

> CAROL JOY LONG
> COMM # 1861787
> NOTARY PUBLIC•CALIFORNIA
> ORANGE COUNTY
> My Commission Expires
> AUGUST 20, 2013

Title Order No.: 5902292
Trustee Sale No.: 75530
Loan No.: 9032969206
APN: 2603-021-021

### EXHIBIT "A"
Legal Description

LOT 30 OF TRACT NO. 31189, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 879 PAGES 46 TO 49 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 100 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEED RECORDED IN BOOK D1101 PAGE 89, OFFICIAL RECORDS.

# EXHIBIT D

 

This page is part of your document - DO NOT DISCARD

## 20120829844

 

Pages:
0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

06/04/12 AT 02:29PM

| FEES: | 28.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |





LEADSHEET



201206040720038

00005913670



004041686

SEQ:
01

DAR - Counter (Upfront Scan)



THIS FORM IS NOT TO BE DUPLICATED

E521057

---

Public Record

Order: [QuickView]  Doc: LA:2012 00829844~06037          Page 1 of 5          Created By: richard.ritchie   Printed: 06/20/2012 4:21:23 PM PST

Recording requested by

**MAIL TAX STATEMENTS TO**

And when recorded mail to:
**Name:** Ruben Heredia
**Street:** Post Office Box 463
**City:** Bloomington
**State:** California ,
92316
APN# 2603-021-021

Space above this line for recorder's use only

## GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $ *This is a reconveyance of realty upon satisfaction*
( x ) computed on full value of property conveyed or *of debt, R&T §§ 921.*"
( ) computed on full value less value of liens and encumbrances remaining at the time of sale
( ) Unincorporated area:( x ) City of Sylmar , County of Los Angeles, California.
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
US BANK NA
hereby GRANT(S) to: Ruben Heredia, a married man, as his sole and separate property,
The following described real property situated in the City of Sylmar , County of Los Angeles, State of
California., See EXHIBIT "A and B", Attached hereto and made part hereof,

US BANK NA

Date: May 31, 2012

DAVID ALAN BOUCHER, AUTHORIZED REPRESENTATIVE

All Capacity Acknowledgement

STATE OF ARIZONA                )
                               )ss:
COUNTY OF MOHAVE          )
On  May  31,  2012,  before  me, Ashley C. Fancher
                               (insert Name of Notary Public and Title)

personally appeared  DAVID ALAN BOUCHER, who proved to me on the basis of satisfactory evidence
to be the person(s)  whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or entity upon behalf of which the person(s) acted,  executed the
instrument.   WITNESS my hand and official seal.

I certify under PENALTY OF PERJURY under the laws of the State of  Arizona  that the foregoing

paragraph is true and correct.

_____ (seal)

OFFICIAL SEAL
ASHLEY C FANCHER
NOTARY PUBLIC - STATE OF ARIZONA
MOHAVE COUNTY
My Comm. Expires March 31, 2016

Order: [QuickView]  Doc: LA:2012 00829844~06037          Page 2 of 5          Created By: richard.ritchie  Printed: 06/20/2012 4:21:24 PM PST

EXHIBIT "A"

PROPERTY DESCRIPTION

APN: 2603-021-021

LOT 30 OF TRACT NO. 31189, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
415, PAGE(S) 30 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER
HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 100 FEET FROM
THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE
ENTRY, AS PROVIDED IN DEED RECORDED IN BOOK D1101 PAGE89,
OFFICIAL RECORDS.

Alternatively designated as: 13777 De Garmo Avenue , Sylmar California [91342].

Public Record

Order: [QuickView]  Doc: LA:2012 00829844~06037          Page 3 of 5          Created By: richard.ritchie   Printed: 06/20/2012 4:21:24 PM PST

EXHIBIT "B"    p.1 of 2

By: Authorized Representative , David Alan Boucher
154A W. Foothill Blvd. #136
Upland, California
near Post Office #[91786]

For: US BANK NATIONAL ASSOCIATION
800 NICOLETT MALL
MINNEAPOLIS MN 55402

June 4, 2012

IN RE:13777 De Garmo Avenue, Sylmar California 91342.
Presentment made for: Ruben Heredia

### NOTICE FOR THE PARTIAL CANCELLATION OF DEBT BY SET-OFF
Notice Number 6042012RH

This Notice is by my giving for the purpose of the settlement of a contract between
Ruben Heredia and  US BANK NATIONAL ASSOCIATION
Pursuant to contract number 2102012RSHMH an undisputed debt owned by US BANK
NATIONAL ASSOCIATION is $2,100,00.00, Two Million One Hundred Thousand
USD.
The fair market value for this property is $ 266,250.00. The adjusted balance of the
contract is $ 1,833,750.00 One Million Eight Hundred Thirty-three Thousand Seven
Hundred Fifity USD, plus the fee pursuant to clause 14.
Therefore, pursuant to contract no. 2102012RSHMH, settlement on the US BANK
NATIONAL ASSOCIATION account is made by Set-off for the amount on the contract
#2102012RSHMH
 A courtesy copy of the contract of my recording with the STATE OF CALIFORNIA ,
SECRETARY OF STATE as UCC FINANCING STATEMENT #12-731243648 and
#12-7309941167 is within my including. By your noticing the Debtor has pledged all its
property in the name of the Debtor. This property is now being taken for this set-off. A
Grant Deed will be issued to reflect the settlement of account pursuant to contract
2102012RSHMH  paragraphs 17, 23 and 24. Partial cancellation of debt owing by the
CORPORATION, US BANK NATIONAL ASSOCIATION is hereby setoff. The proper
forms are by administration being by my sending to the proper organizations and places
to show such an action, also make your adjustments in your books to reflect the
settlement. A copy of the IRS FORM 1099C will be sent as available from the IRS.
Furthermore , I will continue to administer the contract #2102012RSHMH, as by my
acceptance is by duly making and recording and all other documents which are requiring
filing will be constructively made and by filing made so.
Thank you for taking care of this matter timely, if you have any further communications
Please send them to the location by my giving above,

David Alan Boucher , Authorized Representative

Public Record

Order: [QuickView] Doc: LA:2012 00829844~06037          Page 4 of 5          Created By: richard.ritchie   Printed: 06/20/2012 4:21:24 PM PST

*EXHIBIT "B"   p. 2 of 2*

## PROOF OF SERVICE

STATE OF CALIFORNIA

                    ) ss:

COUNTY OF SAN BERNARDINO   )

I , Jeremy Boucher , live in aforesaid county, State of California; I am over the age of 18 and not a party to the within action, I accept mail at General Delivery, Bloomington, California 92316.

On June 4, 2012 I served the foregoing:

    1. NOTICE FOR THE PARTIAL CANCELLATION OF DEBT BY SET-OFF,
       Notice Number 6042012RH.

On interested Parties in this action by placing a true copy thereof, enclosed in a prepaid envelope, addressed as follows:

US BANK NATIONAL ASSOCIATION
800 NICOLETT MALL
MINNEAPOLIS MN 55402.

CERTIFIED MAIL # 7011 0110 0001 6861 3563

Livery is made for: Ruben Heredia

[X] (BY MAIL) I placed such envelope with postage thereon fully paid in the United States mail at Bloomington California. I am "readily familiar" with the practice of collecting and processing correspondence for mailing. It is deposited with United States Post Office on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date is more that 1 day after date of deposit for mailing in affidavit.

[X] ( FEDERAL/STATE) I [de]-clare (or certify , verify or state) under penalty of perjury that the foregoing is true correct and that I

Executed on June 4, 2012.

_____
Jeremy Boucher

PROOF OF SERVICE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## EDCV12- 1320 GW (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| ☒ **Western Division** | ☐ **Southern Division** | ☐ **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Matthew E. Lilly, SBN 218143
mlilly@fwtrl.com
Finlayson Williams Toffer Roosevelt & Lilly LLP
15615 Alton Parkway, Suite 250
Irvine, CA 92618

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| U.S. Bank National Association, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | *EDCV12-1320-GW (DTBx)* |
| David Alan Boucher, an individual, Ruben Heredia, an individual, The Roberto Vargas Cestui Que Trust, and DOES 1 through *10*, inclusive, | **SUMMONS** |
| DEFENDANT(S) | |

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Matthew E. Lilly _____, whose address is Finlayson Williams, et al., 15615 Alton Parkway, Suite 250, Irvine, CA 92618 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___AUG - 8 2012___

By: __MARILYN DAVIS__
     Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| **I (a) PLAINTIFFS** (Check box if you are representing yourself □) | **DEFENDANTS** |
|---|---|
| U.S. Bank National Association | David Alan Boucher, an individual, Ruben Heredia, an individual, The Roberto Vargas Cestui Que Trust, and DOES 1 through 10, inclusive |

| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | **Attorneys** (If Known) |
|---|---|
| Finlayson Williams Toffer Roosevelt & Lilly LLP    Tel: (949) 759-3810<br>15615 Alton Parkway, Suite 250    Fax: (949) 759-3812<br>Irvine, CA 92618 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ 300,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Cancellation of Instruments, Quiet Title and Slander of Title

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☒ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☒ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   EDCV12-1320

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Ohio |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles<br>San Bernardino | Nevada |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____  Date August 8, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |